[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action was commenced by the plaintiff-wife seeking a dissolution of her marriage on the grounds of an irretrievable breakdown. The defendant-husband has filed a cross complaint also seeking a dissolution of the marriage on the grounds of an irretrievable breakdown. Both parties are seeking joint custody of the minor children, child support, and an equitable distribution of the marital assets. Additionally, the plaintiff CT Page 11245 is seeking alimony and restoration of her maiden name.
A trial was held over a four-day period on August 27, 28, and September 3, 4, 1998. The court heard testimony from ten witnesses and received approximately 100 exhibits into evidence. The court takes judicial notice of the contents of the court file and the prior proceedings in this case. After carefully considering all of the evidence as well as weighing and assessing the credibility of all the witnesses, the court finds the following to have been proven.
Michael Paul Scuderi and Bonny Jean Earl were married on May 5, 1973 in Manchester, Connecticut. The parties resided continuously in the State of Connecticut for more than one year prior to the filing of the complaint and the cross complaint. Both parties have completed a parenting education program as ordered by the court. All statutory stays have expired and the court has jurisdiction over the marriage and the parties. The court finds that all of the allegations of the complaint and the cross complaint have been proven true and that the marriage of twenty-five years has broken down irretrievably.
There are three children born of this marriage: Jennifer, born December 2, 1979, Jonathan, born September 29, 1982, and Elizabeth, born March 7, 1988. Neither the State of Connecticut nor any town thereof has contributed to the support or maintenance of either party or any child of the marriage.
There is no single cause for the demise of this marriage. However, the court finds the following factors to have contributed to the breakdown: instances of verbal abuse by both parties, the husband's extravagant spending habits and lack of communication and consultation in decision making, and the wife's relationship with her next door neighbor, Kelly Mellen. The evidence shows that over the past few years the plaintiff has been spending more and more of her time with Ms. Mellen to the exclusion of her husband and children.
The wife is a 47-year-old high school graduate who appears to be intelligent, articulate, and in good health. Although she currently does not possess up to date employment skills, she appears capable of acquiring such skills through education and training.
The plaintiff was approximately 22 years old when she married CT Page 11246 the defendant in 1973. For the first few years of the marriage she worked in various retail positions until the birth of their first child in November 1979. Thereafter, with the exception of two years when she worked for the family business with her husband, her responsibilities and principal contribution to the marriage and to the family were to maintain the home and care for the three children. She testified that she was not expected to work outside of the home after the children were born.
From 1994 to 1996 the wife worked for MicroLink Technologies Inc., a computer business partially owned by her husband. Her duties could best be described as those of a combination receptionist/data entry clerk. There were only three people working for the company at that time: the plaintiff, the defendant and the co-owner of the business, Guy Mattran. The plaintiff earned approximately $10 per hour while at MicroLink.
Throughout this time, and thereafter until approximately July 1997, the plaintiff also assumed the responsibility of reconciling MicroLink's checking accounts. She did this work at her home. The plaintiff has remained unemployed since leaving MicroLink Technologies and has made no significant effort to obtain employment since the filing of this action.
This is a woman who until now has not needed to maintain up to date employment skills. The skills that she has developed over the years are those of a mother and housewife. She has been out of the competitive employment market for almost 20 years and will require time and opportunity to acquire new and marketable skills that she will need as a single parent. Assuming that she could obtain employment at this time, given her minimum skills and experience her wages would be modest and inadequate to support herself and her child. It is not reasonable to expect that she can earn much more than the minimum wage without additional education and training.
The defendant-husband is 46 years of age and in apparent good health. He has been gainfully employed and/or attending college and graduate school throughout the marriage. His early employment consisted of working for local automobile dealers from 1973 through 1977 and operating a small business known as Precision Racing and later Precision Machine which he started in 1977. The defendant also attended the University of Hartford during this period of time earning a B.S. degree in business administration in 1982. He then attended Yale University from 1982 until 1984 CT Page 11247 earning a Master's degree in public and private management. During this period of time (1983-1984) the family subsisted mostly on student loans as well as the defendant's summer and part time earnings.
During the summer of 1983 the defendant worked for the Covenant Insurance Company as an intern. The company hired him as a full time after his graduation from Yale. Mr. Scudieri remained with Covenant until 1987 when he left to join Guy Mattran as a co-owner of MicroLink Technologies Inc.. At the time he left the Covenant Company in 1987 he was an assistant vice president earning a salary of $52,000 per year.
Mr. Scudieri is currently a 51% owner and employee of MicroLink Technologies Inc., where he earns a salary of $85,000 per year. Mr. Scudieri is also a 51% owner of MLT Realty Partners which owns two condominium units located at 1050 Sullivan Avenue, South Windsor, Connecticut. MicroLink Technologies, Inc. rents these condominium units from MLT Realty Partners. Given the defendant's education and experience the court finds that the defendant's earning capacity is at least $85,000 per year.
MicroLink Technologies, Inc. is a closely-held computer business which is run by its two owners who are also its principal employees and sole shareholders of the company. The business derives approximately 80% of its gross income of approximately $800,000 per year from the sale of custom assembled computer hardware and 20% of its gross income from services related to its products. It is functioning in a highly competitive market and, as the result of fiscal imprudence, is currently having difficulty in meeting its financial obligations to its vendors.
On the other hand, the evidence shows that the company has not had any difficulty in paying the $85,000 salary to each of its two owners/employees. Of even more interest is the fact that in addition to drawing their $85,000 annual salaries both owners have been borrowing large sums of cash from the business, virtually at will. As of June 30, 1998, the total sum borrowed from MicroLink by the two owners over the past eleven years is approximately $395,000. As of June 30, 1998, Mr. Scudieri had borrowed in excess of $192,445 and Mr. Mattran had borrowed in excess of $202,320 from MicroLink. In the case of the defendant, the method of borrowing is as simple as making withdrawals from the company account through a bank ATM. Finally, in 1997 CT Page 11248 MicroLink Technologies, Inc. financed the purchased of a new Volvo station wagon and a new GMC pick up truck for the business and personal use of Mr. Scudieri and Mr. Mattran.
The court received testimony from two expert witnesses regarding the economic value of MicroLink Technologies, Inc. Stephen Miller, a tax attorney and CPA, testified for the plaintiff that it is difficult to assess the value of a small closely held company such as MicroLink Technologies. He testified that there is no assessable market for closely-held businesses such as MicroLink. However, by utilizing an accounting formula adopted by the shareholders as a means of evaluating the value of the company in the event of a Miller calculated that the company has an economic value somewhat in excess of $100,000. Although Miller acknowledged on cross examination that he used the company tax returns rather than the financial report required by the formula in arriving at this assessment, his assessment is very close to that reached by David Felch, the defendant's expert witness.
David Felch, a CPA with more than 30 years accounting experience, is the accountant for MicroLink Technologies, Inc. He testified for the defendant that the company is insolvent and that it currently has no marketable value. He acknowledged on cross examination that he conducted an evaluation as to the value of the company using an Internal Revenue Service accounting method which showed that the company has a current value in excess of $100,000, assuming the shareholders repay the $395,000 which they owe to MicroLink Technologies, Inc. There is no credible evidence that either shareholder is in a position to do so at this time.
The plaintiff has asked the court to award her a portion of the defendant's interest in MicroLink Technologies, Inc., and to order the defendant to purchase that interest from her. The defendant argues that MicroLink Technologies has no marketable economic value and therefore cannot be classified as a marital asset. What has been proven is that the company is deeply in debt and has minimal unsecured tangible assets. MicroLink is a very personalized business. Each of the two shareholders has developed and provides services to his own clients. The principal assets of MicroLink Technologies, Inc. are its two shareholders/employees, Michael Scudieri and Guy Mattran. There is no evidence that either shareholder is financially capable purchasing the interest of the other. The court has found no credible or persuasive CT Page 11249 evidence which would establish that MicroLink Technologies, Inc. has any market value at this time. See: Eslani v. Eslani,218 Conn. 801, 814 (1991).
The plaintiff-wife filed for divorce in September 1997 and several weeks thereafter the husband and the two oldest children moved from the marital residence. On November 3, 1997, the parties entered into a pendente lite agreement which was entered as an order of the court. In addition to pendente lite child support and alimony, the defendant agreed, and was ordered by the court, to continue to pay the mortgages, taxes and insurance on the marital home as well as pay all other bills related to the plaintiff as reflected on his financial statement. Included in that category were monthly loan payments on the plaintiff-wife's automobile and the payment of existing credit card and store card balances.
While the defendant has kept current on the court ordered child support and alimony, he has not made court ordered mortgage payments in a timely fashion. In February 1998 the defendant failed to make a $1577.89 monthly payment on his first mortgage loan. He used that money to pay sales tax and DMV registration on a camping trailer. On August 12, 1998, the parties were given notice that they were in default on both the first and second mortgages on their marital house located at 2 Robinson Circle, Ellington, Connecticut for failure to make monthly payments of principal and interest. Thomas McGuire, Vice President of First Federal Savings Bank, testified that the mortgages have been delinquent since March 1998 and that the last payments on the mortgage loans were made in May 1998. As of August 26, 1998, the parties were in arrears on the first mortgage in the amount of $9,263.40 and on the second mortgage in the amount of $ 2,493.27.
Taking into consideration all of the criteria and factors set forth in § 46b-81 and § 46b-82, and applying the same to the evidence, the court enters the following orders.
A degree is entered dissolving the marriage of the parties on the grounds of an irretrievable breakdown, all the allegations of the complaint and counter-complaint having been proven. The plaintiff's maiden name is restored.
CHILD CUSTODY: The parties shall share joint custody of the minor children, Jonathan and Elizabeth. The principal residence of Elizabeth shall be with the plaintiff mother who shall be CT Page 11250 entitled to claim said child as a dependent for the purpose of filing state and federal income taxes. The principal residence of Jonathan shall be with the father who shall be entitled to claim said child as a dependent for the purpose of filing state and federal income taxes. Both parents shall have reasonable rights of visitation and telephone communication with the children. The children shall not be restricted in communicating with the non-custodial parent.
The Proposed Orders of January 26, 1998 regarding a schedule of visitation for the two minor children, as amended, which were made pendente lite orders of the court (Steinberg, J.) are, by agreement of all the parties, made orders of and incorporated by reference into the judgement of the court. Jonathan, who will be 16 years of age on September 29, 1998, shall be consulted concerning the visitation schedule as it applies to him. Said schedule shall be adjusted to meet his needs and wishes. Elizabeth shall enjoy a similar right upon reaching 16 years of age.
CHILD SUPPORT: The defendant-father shall make child support payments to the plaintiff for the minor child, Elizabeth, in the amount of $175.00 per week until said child reaches 18 years of age. However, if upon reaching the age of 18 years, the child remains a full time high school student the defendant shall continue to make child support payments until either the child reaches the age of 19 years or leaves high school, whichever occurs first. The child support payments are to be in the form of a check or money order and are to be mailed to the plaintiff, at her residence, each and every Friday.
To the extent that this order deviates from the child support guidelines the court finds such minimal deviation to be warranted given the other financial benefits and obligations assigned to the defendant by the court which will directly and indirectly be of benefit to the child.
MEDICAL/DENTAL INSURANCE: The defendant shall provide medical and dental insurance for the minor children until they reach the age of majority or for as long as there is a child support obligation for the child. The parties shall equally share any medical or dental expenses incurred by the child that are not covered by insurance. The provisions of § 46b-84 shall be applicable.
The defendant shall also assist the plaintiff in obtaining CT Page 11251 medical insurance through his place of business under COBRA. He shall pay the premium on this coverage for a period of eighteen months.
ALIMONY: The defendant-husband shall pay to the plaintiff-wife periodic alimony in the amount of $27,000 per year for 15 years. Said alimony shall be paid monthly by a check or money order in the amount of $2250.00. The check is to be mailed to the plaintiff at her residence on the first day of each and every month. The plaintiff is currently 47 years old. In fifteen years she will reach the age of 62 at which time, under current federal regulations, she will be eligible for social security benefits and will no longer require the same level of support. The alimony shall not be modifiable as to amount or duration except that alimony payments shall terminate upon the remarriage of the plaintiff or the death of either party.
PROPERTY DISTRIBUTION: The ratio of the distribution of property reflects the court's finding that the wife's contribution to the marriage was mostly concentrated in the home, whereas the husband's contribution to the marriage was mainly concentrated in his business and employment. The court takes note of an admission by counsel that the plaintiff sold a 3500-watt generator in violation of the automatic orders of the court. The distribution of the marital assets also reflects a realistic assessment of the financial needs and resources of the parties.
(A) Title to the property located at 2 Robinson Circle, Ellington, Connecticut shall remain vested in both parties until said property is sold. The parties shall immediately place the property on the market to be sold for its fair market value as soon as possible. The plaintiff and defendant shall cooperate in the marketing and sale of this property.
Upon the sale of the property, and after paying the two outstanding mortgages, customary closing costs, commissions and taxes, 60% of the net proceeds of the sale of the property shall be given to the plaintiff wife and 40% of said net profits shall be given to the defendant husband. The personal loan from Charles Church to Michael Scudieri shall remain the obligation of the defendant and shall not be paid out of the gross funds from the sale of the marital residence. The defendant shall continue to be responsible for the monthly payment of the mortgage loans and taxes on the property until its sale. Any arrearage of the mortgage loans and/or taxes as of the date of closing shall be CT Page 11252 assessed against the defendant's share of the net proceeds from the sale of the house.
(B) The 1997 Travel Trailer and the 1990 GMC Suburban 1500 motor vehicle shall be the sole property of the defendant free of any claims of the plaintiff who also shall be held harmless for any liability thereon.
(C) The 1996 Chrysler automobile shall be the sole property of the plaintiff free of any claims of the defendant who shall also be held harmless for any liability thereon.
(D) The defendant is assigned sole ownership of his 51% interest in MicroLink Technologies Inc. The court has very carefully weighed the equity and risks of divesting the defendant of any of his interest in MicroLink Technologies and has concluded that it is not in the best interest of any of the parties to do so. This business, which is in serious financial difficulty, does not exist separately from the two employees/shareholders. The court finds it reasonable to conclude that only the extraordinary efforts and fiscal restraint of its current owners can pull MicroLink Technologies, Inc. back from the brink of failure.
There are very limited resources available to Michael and Bonney Scudieri to meet their needs and the needs of their children. The extravagant excesses of the past are over and the parties must face fiscal reality. The source of the financial support for the plaintiff and the minor children ordered by this court is the earning capacity of the defendant. Currently, MicroLink is the source of that salary. Assigning any ownership portion of the company to the plaintiff would, in the opinion of the court, create an unacceptable risk to the business and thus to the financial support needed by the plaintiff and the minor children.
(E) Unlike MicroLink Technologies, Inc., MLT Realty Partners is a fiscally sound business with marketable value. Also, unlike MicroLink Technologies, its viability does not depend upon the personal efforts of the defendant. This is clearly a marital asset, with value. The plaintiff is assigned one half of the defendant's 51% interest in MLT Realty Partners.
(F) The defendant is assigned and shall be given a reasonable opportunity within 30 days of the date of this order to retrieve CT Page 11253 the mechanics' tool set and tools, power tools, automobile parts, and the computer tables and equipment that is owned by MicroLink Technologies, Inc., that are within the garage and/or basement of the 2 Robinson Circle property. If these items are not removed by the defendant within 30 days of the date of this order said items will become the property of the plaintiff. The plaintiff and a neutral third party are to be present at the time said items are removed from the premises.
(G) The Basstender Pro boat, motor and trailer currently within the possession of the plaintiff are assigned to and shall be the sole property of the plaintiff.
(H) The home entertainment center currently within the possession of the defendant is assigned to and shall be the sole property of the defendant.
(I) All other items of personal and household property, including bank, investment and retirement accounts, currently in the possession of the plaintiff shall remain her property free of any claims by the defendant.
(J) All other items of personal and household property, including bank, investment and retirement accounts, currently in the possession of the defendant shall remain his property free of any claims by the plaintiff.
EXISTING DEBTS AND LIABILITIES:
(1) The parties shall equally share in paying the children's attorney fees and the children's counseling costs resulting from this action.
(2) After considering the statutory criteria concerning the awarding of attorney fees, and assessing the limited resources of both parties, the court orders the defendant to pay the plaintiff $5000 toward her attorney fees within 30 days of the date of this judgement.
(3) All of the liabilities set forth on the plaintiff's financial affidavit and Schedule A, dated and signed on August 24, including the balance due on her Sears store card account as reflected on her financial statement and the defendant's financial statement, shall be the sole obligation of the plaintiff and she shall hold the defendant harmless from any CT Page 11254 liability thereon. In addition, the plaintiff shall assume responsibility for payment of the balance of the loan to Chase Auto Finance Co. for the 1996 Chrysler automobile as of the date of this judgement.
(4) With the exception of the installment loan to Chase Auto Finance for the 1996 Chrysler, and the balance due on the plaintiff's Sears store card account, all of the liabilities and debts set forth on the defendant's financial affidavit and the defendant's personal financial statement dated August 1, 1998 and signed by the defendant on August 25, 1998, including obligations to the state and federal governments for unpaid taxes, shall be the sole obligation of the defendant. The defendant shall hold the plaintiff harmless from any liability thereon.
(5) The defendant shall continue to be responsible and liable for paying the monthly mortgage loan payments and payment of the taxes for the marital residence as ordered under Property Distribution set forth above.
Counsel for the plaintiff shall prepare and both counsel shall sign and submit to the court a judgement file in accordance with this decision within twenty days of the date of this order.
Terence A. Sullivan Superior Court Judge